IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 6110 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Susan G.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 15, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 20, Def.'s Mot.] is granted. The Court affirms the Commissioner's final decision.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On April 24, 2018, Plaintiff filed a claim for DIB, alleging disability since September 19, 2017, due to pain, confusion, general weakness, depression, anxiety, and fibromyalgia. [Dkt. 14-1, R. 157-58, 184.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 66, 81.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 13, 2019. [R. 29-55.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 31-49.] Vocational expert ("VE") Pamela Nelligan also testified. [R. 49-54.] On January 13, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 13-24.] The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1-3.]

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 13-24.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 19, 2017. [R. 15.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia, obesity, and lumbar degenerative disc disease. [R. 15.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 17.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she cannot climb ladders, ropes, or scaffolding, and can only frequently crawl, crouch, kneel, and

climb ramps and stairs. [R. 17-23.] At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work. [R. 23.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 23-24.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id*.

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g); *Cullinan v.*

*Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to

4

whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff primarily argues that the ALJ (1) erroneously relied on outdated opinions of the state agency medical consultants, (2) did not properly evaluate the opinion of treating rheumatologist, Dr. DelBusto, and (3) failed to properly assess Plaintiff's subjective symptoms. [Dkt. 15, Pl.'s Mem. at 4-13; dkt. 22, Pl.'s Reply at 1-7.] The Commissioner argues in opposition that the ALJ reasonably assessed the medical opinions and Plaintiff's subjective symptoms. [Dkt. 21, Def.'s Mem. at 3-15.] For the reasons that follow, the Court affirms the ALJ's decision.

### A. Medical Opinion Evidence

Because Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight," to any medical opinion or prior administrative medical finding. Instead, the ALJ considers a variety of factors in assessing medical opinions, but the "most important factors"—and the only ones that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

5

1.  **State Agency Physicians**

First, Plaintiff argues that the ALJ erred in relying on the allegedly outdated opinions of the state agency medical consultants in this matter. [Pl.'s Mem. at 4-6.] Plaintiff explains that those physicians issued their opinions before a 2019 MRI that, she asserts, is crucial to her case because it showed that she had disc bulging and foraminal stenosis, resulting in a new diagnosis of degenerative disc disease. [*Id.*] Thus, Plaintiff maintains that the ALJ erred in assigning weight to the state agency physicians' opinions and "played doctor" by opining as to the significance of the MRI on the ALJ's own. [*Id.* at 5-6.]

In August 2018, state agency medical consultant, Dr. Robert Vautrain, opined that Plaintiff could perform light work except that she could never climb ladders, ropes, and scaffolds and could frequently climb ramps and stairs, kneel, crouch, and crawl. [R. 61-64.] In February 2019, on reconsideration, Dr. Young-Ja Kim considered additional medical records and ultimately adopted the same RFC as Dr. Vautrain. [R. 76-80.] The ALJ found their opinions about exertional and postural limitations persuasive in her January 2020 decision, explaining that Plaintiff's "conservative treatment, various exams within normal limits, and lumbar MRI findings" all support that Plaintiff could perform light work with postural limitations. [R. 22.]

Following the state agency physicians' opinions but prior to the December 2019 hearing before the ALJ, Plaintiff sought additional treatment. At a June 2019 medical visit, Plaintiff reported to Dr. Paul DelBusto, her treating rheumatologist, continuing significant diffuse musculoskeletal pain, and an MRI was ordered. [R. 327.] The June 2019 MRI at issue revealed that she had disc bulges at L2-3, L3-4, and L5-S1, retrolisthesis at L5-S1, and resulting foraminal stenosis in those 3 areas. [R. 348.] The following month Plaintiff had a consultation with Dr. Richard Lim for her low back pain and leg numbness. [R. 374-76.] Her physical

6

examination revealed normal lumbar alignment, tenderness to palpation in midline and paraspinals at the lumbosacral junctions of her spine, normal range of motion but with pain worsening on the extremes of flexion and extension, full strength, negative straight leg raise test, and normal gait and station. [R. 375.] Dr. Lim reviewed the MRI, concluding that it showed degenerative disc disease primarily at L5-S1, mild upper lumbar disc degeneration, and no severe stenosis. [R. 376.] Dr. Lim concluded that Plaintiff's symptoms were consistent with fibromyalgia, degenerative disc disease, and spinal stenosis but that "the majority of her symptoms appear to be more myofascial or fibromyalgia in nature." [*Id.*] When Dr. Lim recommended that Plaintiff treat her conditions with physical therapy and did not recommend surgery, Plaintiff responded that she preferred to continue chiropractic care; Dr. Lim advised Plaintiff to consider performing exercises on her own to assume responsibility for her condition. [*Id.*]

In most cases, there is a time gap between the state agency physicians' opinions and the ALJ's decision, so the mere fact that new medical records come in after the state agency physicians' review is not problematic on its own. *Sheila M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021); *see Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) ("If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end."). The ALJ must not, however, "rely on a physician's assessment 'if later evidence containing new, significant medical diagnoses reasonably could have changed the physician's views.'" *Pavlicek v. Saul*, 994 F.3d 777, 783-84 (7th Cir. 2021) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). Although the MRI did reveal a new diagnosis—degenerative disc disease—which the ALJ found to be a severe impairment, [R. 15, 348], the Court concludes that the new evidence here was not significant enough such

7

that the ALJ erred by relying on the state agency physicians' opinions rendered prior to the submission of the new evidence. *See, e.g., Pavlicek*, 994 F.3d at 783-84; *Sheila M.*, 2021 WL 1784775, at *6.

This case is unlike those that Plaintiff cites in which the Seventh Circuit has remanded because of new evidence. For example, in *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014), an MRI showing a new condition was never evaluated by a physician and could have corroborated the plaintiff's complaints of headaches, which the ALJ ultimately overlooked. Here, in contrast, the newly taken MRI was reviewed by Dr. Lim, who interpreted the results and explained that the majority of Plaintiff's symptoms were still related to her previously diagnosed fibromyalgia rather than the newly diagnosed degenerative disc disease. [R. 376.] And rather than overlook the additional evidence, the ALJ reviewed Dr. Lim's findings and concluded that the additional diagnosis, when combined with Plaintiff's other conditions, still rendered her able to perform light work with additional postural limitations. [R. 20-21.] In another cited case, the Seventh Circuit remanded because a doctor's new report that documented a need for a total hip replacement and evidence of further spinal degeneration was so significant that it could have affected the state agency physician's opinion regarding the plaintiff's ability to stand. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016); *see also Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (remanding where new x-rays of fingers were inconsistent with findings in ALJ's opinion about plaintiff's ability to handle and manipulate objects).

The evidence here, however, was not a drastic shift in Plaintiff's condition but rather demonstrated similar continuing symptoms and a new diagnosis that Dr. Lim did not find to be the main cause of those symptoms. [R. 376; *see, e.g.,* R. 327 (Dr. DelBusto's referral of Plaintiff for MRI because of *continuing* significant diffuse musculoskeletal pain).] The state agency

physicians had already reviewed records concerning Plaintiff's fibromyalgia and long-term symptoms of pain and tenderness. [*See* R. 62-63 (citing exam records documenting muscle pain and tenderness); R. 77-78 (same).] *See, e.g., Keys*, 679 F. App'x at 481 (finding new evidence not significant where new MRIs and report reflected mild changes in plaintiff's spine).

Plaintiff also cites cases in which large swaths of medical evidence came into the record after the state agency physicians' review, but the state agency doctors in this case were able to review most of Plaintiff's treatment records. *Cf. Childress v. Colvin*, 845 F.3d 789, 792 (7th Cir. 2017) (doctors had "a severely incomplete set of the plaintiff's medical records"); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (doctors accessed "only a fraction" of the record); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (doctors did not review any treatment notes from treating psychiatrist).

Plaintiff also has failed to demonstrate that the new evidence would have altered the state agency physicians' opinions. She generally points out that symptoms associated with spinal stenosis and claudication can be provoked by walking and standing, [Pl.'s Mem. at 5-6], but this general information is insufficient to demonstrate that the new evidence in particular caused any change in *Plaintiff's actual condition* or an additional limitation. *See Keys*, 679 F. App'x at 481. And she has not shown that there was an inherent inconsistency with the MRI findings and Dr. Lim's evaluation as opposed to the previously rendered state agency physicians' opinions. *See, e.g., Sheila M.*, 2021 WL 1784775, at *9 (rejecting plaintiff's argument about new evidence where plaintiff did not demonstrate that the records would have changed the state agency physicians' opinions). Thus, the Court concludes that the ALJ did not err in relying on the state agency physicians' opinions despite the later MRI.

9

Moreover, the Court finds unpersuasive Plaintiff's assertion that the ALJ played doctor by interpreting the MRI and its significance on her own. [Pl.'s Mem. at 5-6.] This was not a case in which the ALJ determined "the significance of particular medical findings" herself. *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *see also Goins*, 764 F.3d at 680 (ALJ erred by interpreting results of MRI without expert input). Rather, as discussed above, the ALJ relied on Dr. Lim's interpretation of the MRI and considered his findings concerning the severity of Plaintiff's condition. [*See* R. 20-21 (citing R. 376).] From there, she appropriately determined what limitations the medical evidence supported in determining the RFC, as was her responsibility. *See* 20 C.F.R. § 404.1546(c).

As a final matter, Plaintiff contends that by relying on the state agency doctors' opinions, the ALJ failed to consider her impairments in combination because they had not considered her degenerative disc disease and had not found her obesity to be severe. [Pl.'s Mem. at 6-8.] Plaintiff argues that the ALJ failed to explain how the additional impairments that she found severe—obesity and degenerative disc disease—did not result in any additional limitations on Plaintiff's ability to be on her feet in a workday. [*Id.*] This argument is meritless, as well, however. Under the regulations, the ALJ must evaluate the combined effect of all impairments, 20 C.F.R. § 404.1523(c), but it does not follow that the ALJ cannot find a doctor's opinion persuasive even if that doctor did not consider the sum of a claimant's impairments. *Keys*, 679 F. App'x at 481. If that were correct, Dr. DelBusto's opinion that Plaintiff urges the ALJ should have credited (and indeed, all the medical opinions in the record) would also be outdated given that it was rendered in November 2018, prior to the MRI. [R. 319-21.] What matters ultimately is that the ALJ did indeed fulfill her duty to evaluate the combined effect of all of Plaintiff's impairments in determining the RFC by reviewing the record evidence of all of

10

Plaintiff's conditions, including fibromyalgia, obesity, and back problems (which included degenerative disc disease), and by explaining how the evidence led her to conclude that Plaintiff could perform light work with additional postural limitations. [*See* R. 18-23.] Further, to the extent that Plaintiff's argument is a contention that the greater number of severe impairments necessarily means more impact on Plaintiff's abilities, that does not necessarily follow; a severe impairment is simply one that significantly limits a plaintiff's ability to perform basic work activities in some way, not necessarily a different way than other impairments. *See* 20 C.F.R. § 404.1522. Accordingly, for all of the reasons explained above, the ALJ reasonably found the state agency physicians' opinions persuasive and properly relied on them in crafting the RFC.

### 2. Treating Rheumatologist

Next, Plaintiff argues that the ALJ failed to properly assess treating rheumatologist Dr. Paul DelBusto's opinion according to the regulatory factors. [Pl.'s Mem. at 8-10.] The ALJ first recounted the doctor's main conclusions from the fibromyalgia RFC questionnaire that the doctor completed in November 2018, including that (1) Plaintiff's symptoms would constantly interfere with her attention and concentration needed to perform simple work tasks, (2) she was incapable of even a "low stress" job, (3) she could sit and stand/walk less than 2 hours total each in an 8-hour workday, (4) she would need to walk throughout the day, change positions at will, and take unscheduled breaks throughout the day, (5) she could never lift any weight or climb stairs, and (6) she would be absent from work more than 4 days per month. [R. 22; *see* R. 319-21.] Concluding that Dr. DelBusto's opinion was "not persuasive," the ALJ acknowledged that Dr. DelBusto was Plaintiff's treating rheumatologist, but ultimately found that his opined limitations were "extreme and grossly inconsistent with his own treatment of [Plaintiff]." [R. 22.] Specifically, the ALJ explained that although Plaintiff's "complaints as to [the] severity

11

[of her condition] varied, her exam findings remained the same." [*Id.*] And Dr. DelBusto's treatment of Plaintiff "mainly consisted of prescribing Trazodone with a few injections which appeared to help." [*Id.*]

Plaintiff takes issue with the ALJ's conclusion that Dr. DelBusto's opined limitations, including that Plaintiff could only stand and walk for a total of 2 hours in an 8-hour workday, were inconsistent with his treatment notes. [Pl.'s Mem. at 9.] She cites evidence from those notes that she argues supports this limitation to 2 hours of standing and walking in a workday: Dr. DelBusto's regular treatment of Plaintiff every 2 to 3 months; the examination findings of diffuse tender points and tender lower back; the diagnoses of cervicalgia, fibromyalgia, low back pain, left radicular arm pain, and enthesopathy; the prescription of Cymbalta, Trazodone, and pain relief injections; the treatment recommendations of physical therapy, aerobic exercises, and acupuncture; the regular assessment of Plaintiff for risk of fall; and the referral of Plaintiff for an MRI in June 2019. [*Id.*] This same evidence was identified and reviewed by the ALJ earlier in her decision, however. [*See* R. 18-21.] The ALJ ultimately weighed the evidence differently, concluding that the treatment notes overall *did not* support Dr. DelBusto's opinion and giving two examples. [R. 22.] The ALJ noted that the primary treatment of Plaintiff's condition was Trazodone, which Plaintiff testified was prescribed mostly for sleep, [R. 38; *see also* R. 298 (Plaintiff reporting to consultative examiner that she took Trazodone for "sleep only")], along with a few injections that improved her condition, and believed that this course of treatment was inconsistent with the drastic limitations that Dr. DelBusto had opined. [R. 22.] Additionally, in the ALJ's view, the treatment notes did not lend the support to the doctor's opinion that Plaintiff argues they do, because the objective findings remained the same no matter the symptoms Plaintiff reported experiencing. [*Id.*; *see also* R. 18-20.] Plaintiff's reliance on general

12

diagnoses, treatments, medications, and findings of tenderness from the treatment notes that do not point to any specific limitations does not undermine the ALJ's interpretation of the same notes as not supporting Dr. DelBusto's opinion, which was a permissible—and indeed, important—ground on which the ALJ could find the opinion not persuasive. *See* 20 C.F.R. § 404.1520c(c)(1) (supportability a factor the ALJ must consider in evaluating opinion evidence); *Pavlicek*, 994 F.3d at 781-83 (affirming where ALJ discounted treating physician's opinion as inconsistent with treatment notes).

Plaintiff's contention that Dr. DelBusto's opinion was supported by and consistent with other record evidence fares no better. [Pl.'s Mem. at 9-10.] She relies on her treating chiropractor Michael McVody's similar opinion that she could stand and walk for less than 2 hours in an 8-hour workday. [*Id.* at 9.] But the ALJ rejected Mr. McVody's opinion as unpersuasive on several grounds, and Plaintiff does not now challenge that analysis. [*See* R. 22-23.] Mr. McVody's opinion that the ALJ rejected therefore cannot bolster Dr. DelBusto's opinion. Otherwise, Plaintiff identifies findings from a nurse practitioner at an exam that Plaintiff had low back tenderness and muscle spasm, a BMI over 34, and a diagnosis of fibromyalgia, [R. 358-59], as well as Dr. Lim's diagnosis of degenerative disc disease (but also his conclusion that Plaintiff's symptoms were primarily related to fibromyalgia), his general exam findings, and the symptoms Plaintiff reported to him. [Pl.'s Mem. at 9-10.] But, as with the treatment notes, this evidence was already considered in the ALJ's analysis, [R. 18-21], and Plaintiff does not explain how the general reports of her symptoms, BMI, and diagnoses translate into the "extreme" limitations that Dr. DelBusto endorsed. [R. 22.]

In sum, Plaintiff essentially asks this Court to reweigh the medical evidence and reach a different result, which it is not permitted to do. *See Beardsley*, 758 F.3d at 836-37. Because the

13

ALJ articulated sufficient reasons why she did not find Dr. DelBusto's opinion consistent or supported by the record, and substantial evidence supports that decision, the Court upholds it. *See, e.g., id.* (the Court reviews the record as a whole to determine whether substantial evidence exists, but cannot substitute its judgment for the ALJ's by reweighing the evidence); *Shaun R. v. Saul*, No. 18 C 4036, 2019 WL 6834664, at *5 (N.D. Ill. Dec. 16, 2019) ("So, as she is required to do, the ALJ acknowledged evidence on both sides of the issue and reached a conclusion. As long as she didn't ignore evidence that points to a disability, she has fulfilled her duty to minimally articulate the path to her conclusion.").

### B. Plaintiff's Subjective Symptoms

When evaluating a plaintiff's reports of her symptoms, in addition to the objective medical evidence, the ALJ may also consider a plaintiff's daily activities, intensity of pain and other symptoms, precipitating and aggravating factors, medications and their side effects, treatment received, and any other measures used to relieve symptoms. 20 C.F.R. § 404.1529(c)(1-3). The Court will overturn the ALJ's evaluation of a plaintiff's subjective statements only if it is "patently wrong."[3] *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir.

---

[3] Plaintiff argues for the first time in her reply brief that the "patently wrong" standard should no longer apply given that SSR 16-3p superseded SSR 96-7p (the prior ruling concerning subjective symptoms), because the new regulation removed the term "credibility" to clarify that evaluating subjective symptoms "is not an examination of an individual's character." [Pl.'s Reply at 5-6 (quoting SSR 16-3p).] Plaintiff contends that the Court should eliminate the "special deference" afforded to subjective symptom evaluations given that they are no longer subjective evaluations of credibility but rather objective evaluations of different factors. [Pl.'s Reply at 5-6.] This prompted the Commissioner to file a sur-reply brief solely to rebut this argument. [Def.'s Sur-Reply at 1-3.] Ultimately, SSR 16-3p and SSR 96-7p include the same effective factors, and the Seventh Circuit and this District continue to apply the "patently wrong" standard and afford "special deference" to findings in cases where SSR 16-3p applies, so this Court does, as well. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996) *with* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); *see, e.g., Deborah M. v. Saul*, 994 F.3d 785, 790-91 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (per curiam); *John E. v. Kijakazi*, 2021 WL 4125089, at *4 & n.6 (N.D. Ill. Sept. 9, 2021).

14

2017); *see Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022). The ALJ must give "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (explaining that patently wrong "means that the decision lacks any explanation or support"). Indeed, "an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence." *Pepper*, 712 F.3d at 362 (internal quotation omitted).

Although Plaintiff raises two main criticisms of the ALJ's subjective symptom evaluation, neither convince the Court that the ALJ's decision in this respect was "patently wrong." *Summers*, 864 F.3d at 528. First, Plaintiff argues that the ALJ improperly characterized her course of treatment as "'minimal, conservative treatment'" without identifying "record evidence of what other treatment may have been available or appropriate." [Pl.'s Mem. at 10-11 (quoting R. 21).] But this is belied by the ALJ's decision. The ALJ explicitly noted that Plaintiff had treated her conditions by taking Cymbalta for fibromyalgia for a short period, continually taking Trazodone for sleep, engaging on and off in chiropractic care, and receiving a few tender point injections. [R. 21.] Then the ALJ explained that physical therapy was recommended to her by 3 different providers and aerobic exercise was also encouraged, but Plaintiff had declined to engage in them. [*Id.*] When the ALJ questioned Plaintiff about her treatment at the hearing, Plaintiff testified that she does not do any additional treatment because her rheumatologist told her that there's really nothing to be done. [R. 38-39; *see* R. 18.] Thus, the ALJ reasonably probed Plaintiff as to why her treatment was relatively limited and then reasonably concluded based on Plaintiff's medical providers' recommendations that physical therapy was available and appropriate treatment for Plaintiff. Accordingly, when determining that Plaintiff's subjective symptom reports were not entirely consistent with the record, the ALJ

15

did not err by characterizing Plaintiff's treatment as minimal and conservative. *See* 20 C.F.R. §404.1529(c)(3)(iv, v) (ALJ may consider factors including medications and treatment in evaluating Plaintiff's subjective complaints); *Deborah M.*, 994 F.3d at 790 (ALJ properly considered Plaintiff's course of treatment as outlined in record in evaluating subjective complaints); *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (ALJ appropriately characterized treatment of pain medication, several injections, and one physical therapy session as "relatively conservative" treatment).

Second, Plaintiff faults the ALJ for not explaining (a) why Plaintiff's complaints of pain and fatigue would not have been expected to have resulted from her fibromyalgia, given the subjective nature of the disease's symptoms, and (b) specifically why the allegations of pain and fatigue were not consistent with the record. [Pl.'s Mem. at 11-13.] Plaintiff cites evidence (that the ALJ indeed included in her decision) that Plaintiff contends was consistent with her subjective complaints of pain, such as: her rheumatologist's repeated findings of diffuse tender points and diffuse muscular skeletal pain, the consultative examiner's assessment of Plaintiff as having fibromyalgia with aches and pains in all her joints, her nurse practitioner's notation of muscle spasm and tenderness, and Dr. Lim's assessment of Plaintiff's symptoms as being consistent with fibromyalgia. [*Id.* at 11-12.] Plaintiff, however, does not explain how these findings and diagnoses amount to evidence that supports her allegations of *disabling* pain. *See Pamela J. v. Kijakazi*, No. 22 C 0812, 2022 WL 11748478, at *7 (N.D. Ill. Oct. 20, 2022) ("An impairment is not necessarily disabling; diagnosis is not disability. . . . What matters is the severity of the condition and how it limits plaintiff's capacity to work based on clinical and/or laboratory findings.").

16

As Plaintiff correctly points out, there is often "no objective medical evidence indicating the presence or severity of fibromyalgia." *Apke v. Saul*, 817 F. App'x 252, 257 (7th Cir. 2020). Still, the Social Security ruling concerning evaluation of fibromyalgia provides that the same factors for evaluating all subjective symptoms apply to fibromyalgia as well. *Compare* SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012) (evaluation of fibromyalgia) *with* SSR 16-3p, 2017 WL 5180304, at *3-4 (Oct. 25, 2017) (evaluation of symptoms generally). Thus, when evaluating fibromyalgia or any other condition, the ALJ must not reject complaints about pain *solely* because of the objective evidence, but the ALJ is entitled to consider the objective evidence as one factor in evaluating a plaintiff's subjective symptom reports. 20 C.F.R. § 404.1529(c)(2). Here, the ALJ reasonably concluded that objective evidence in the record—including specific exam findings that Plaintiff had normal gait, normal neurological findings, negative straight leg raise, and normal range of motion in her lumbar area with some pain worsening on extremes of flexion and extension—was inconsistent with Plaintiff's reported symptoms. [R. 21.]

Moreover, in addition to discounting Plaintiff's subjective complaints on the basis of her course of treatment and the objective evidence, the ALJ also permissibly considered Plaintiff's daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i). The ALJ noted that Plaintiff reported that she prepared meals and did housework with breaks, she is able to drive and shop for groceries twice a week, and she enjoyed yardwork. [R. 17.]

Overall, the ALJ gave "specific reasons supported by the record" for finding Plaintiff's subjective reports not entirely consistent with the record, *Pepper*, 712 F.3d at 367, which tracked the applicable regulatory factors, 20 C.F.R. § 404.1529(c). The ALJ's evaluation is thus supported by substantial evidence, and reversal is not warranted on this basis.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 15] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 20] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 3/15/23

_____
BETH W. JANTZ
United States Magistrate Judge